UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EMPLOYERS MUTUAL CASUALTY
COMPANY

CIVIL ACTION

VERSUS

NO: 14-1420

PRECISION CONSTRUCTION &
MAINTENANCE , LLC, et al.

SECTION: R

## <u>AMENDED ORDER AND REASONS</u>

This amended order replaces the Court's previous order
and reasons, dated September 2, 2015.  Due to a formatting
conversion error, the prior order was published without the
text of footnote 49.  The missing text has been reinserted
into footnote 49 of this amended order and reasons.  No
other changes were made to the Court's original order.

Plaintiff Employers Mutual Casualty Company moves for
summary judgment on its claims for contractual
indemnification in the amount of $10,000 and specific
performance of a collateral security provision in the
parties' indemnity contract.  Plaintiff also moves to
separate the issues in this case under Rule 42(b) of the

Federal Rules of Civil Procedure and to stay its indemnity claims for future losses and attorneys' fees.  Defendants admit that plaintiff is entitled to $10,000 in indemnification but contest plaintiff's entitlement to specific performance and its motion to separate issues and stay proceedings.  For the following reasons, the Court grants plaintiff's motions for summary judgment on plaintiff's $10,000 indemnification and specific performance claim.  Additionally, the Court concludes that before it can rule on plaintiff's motion to separate issues and stay proceedings, plaintiffs must show cause why its claim for indemnification for future losses should not be dismissed as premature instead of stayed.

## I.   BACKGROUND

This case involves a contractual dispute between a surety company and a construction contractor.  Plaintiff, a company that issues payment and performance bonds and stands as a surety for contractors, issued bonds to enable defendants to obtain several construction and renovation

contracts.  Plaintiff alleges that third parties have now made claims against those bonds and that plaintiff has and may continue to sustain losses as a result.  According to plaintiff, an indemnity contract between the parties entitles plaintiff to indemnification for past and future losses, attorneys' fees, costs, and expenses incurred in connection with the bonds.  Plaintiff also argues that the contract requires defendant to deposit a reserve of cash or collateral, which plaintiff may use to pay claims and expenses incurred on bonded projects.

## A.   The Indemnity Agreement

On or about June 9, 2009, the parties entered into a General Agreement of Indemnity (the "Indemnity Agreement") in favor of plaintiff.[1]  By executing the Indemnity Agreement, Precision Construction and Maintenance, LLC, Craig Trahan, and Marilyn Trayan (the "defendants") agreed to be jointly and severally bound by its terms.[2]  Section 2 of the Indemnity Agreement states that defendants:

---

[1] *See* R. Doc. 1-1.

[2] *Id.* at 1.

Shall exonerate, indemnify, and keep indemnified [plaintiff] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which [plaintiff] may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal or the Undersigned to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

*     *     *

The surety may pay or compromise any claim, demand, suit, judgment or expense arising out of such bond or bonds and any such payment or compromise shall be binding upon [plaintiff] and included as a liability, loss or expense covered by this Indemnity Agreement.[3]

Section 3 of the Indemnity Agreement confirms plaintiff's

broad authority to settle claims upon any bond it executes:

[Plaintiff] shall have the exclusive right for itself and for [defendant] to decide and determine whether any claim, demand, suit or judgment upon any such bonds shall, on the basis of liability, expedience or otherwise be paid, settled, defended or appealed, and its determniation shall be final, conclusive and binding on [defendant].[4]

---

[3] *Id.* at 1, § 2.

[4] *Id.* at 1, § 3.

Importantly, the Indemnity Agreement also includes a provision entitled "Right to Demand Reserve," which states:

> If for any reason [plaintiff] shall be required or at its option and in its sole discretion shall deem it necessary to set up a reserve in any amount . . . [defendants], within 10 calendar days after mailing by [plaintiff] of written demand by registered or certified mail shall deposit with [plaintiff], cash or collateral in the amount of such reserve and every increase thereof, to be held by [plaintiff] as collateral with the right to use any such funds or any part thereof, at any time, without notice to [defendants] in payment or compromise of any judgment, claim, liability, loss, damage, attorneys' fees, engineers' fees, investigative charges and other disbursements and/or expenses in connection with said Bond or Bonds or in anticipation of loss thereunder.[5]

## B. The Yacht Harbor Project and Subsequent Litigation

On November 1, 2010, defendant contracted with the City of New Orleans to serve as a general contractor for repairs of the Municipal Yacht Harbor Administration Building ("the Yacht Harbor Project").[6]  Because defendant required a bond to complete the Yacht Harbor Project, defendant asked plaintiff to execute one in its favor.[7]  In reliance on the

---

[5] R. Doc. 1-1 at 3, § 11.

[6] *See* R. Doc. 13-4.

[7] R. Doc. 13-12 at 4, ¶ 10; *see also* R. Doc. 22-2 at 2, ¶ 10

Indemnity Agreement, plaintiff provided a payment and performance bond, number S359693 ("The Yacht Harbor Bond"), on behalf of defendants, as principal, in favor of the City of New Orleans, as obligee.[8]  The Yacht Harbor Bond secured defendant's obligation to perform the contract for the Yacht Harbor Project.[9]  Its sum of $754,000.00 represented the maximum amount that plaintiff could be held liable for as surety in the event of defendant's failure to perform.[10]

Unfortunately, the Yacht Harbor Project did not go as planned.  Defendants allege that the Project was marred at the outset by the City's failure to (1) provide specifications that conformed to local building codes; (2)

---

(defendant's admission to plaintiff's statement of uncontested fact).

[8] R. Doc. 13-12 at 4, ¶ 11; *see also* R. Doc. 22-2 at 2, ¶ 11 (defendant's admission to plaintiff's statement of uncontested fact); *see* R. Doc. 13-4 at 6 (plaintiff's report of execution of the Yacht Harbor Bond).

[9] *See* R. Doc. 13-4 at 2 (plaintiff's declaration to "bind itself as surety for the faithful performance of all work called for in [the Yacht Harbor Project] contract in the full sum of $754,000.00").

[10] *See* R. Doc. 13-4 at 2 (plaintiff's declaration to "bind itself as surety for the faithful performance of all work called for in [the Yacht Harbor Project] contract in the full sum of $754,000.00"); R. Doc. 13-4 at 6 (plaintiff's report of execution of the Yacht Harbor Bond).

perform necessary lead paint abatement work; and (3) timely respond to requests for information and change orders.[11] After years of delay and the City's alleged failure to pay costs and expenses due to defendants, defendants terminated the Yacht Harbor Project contract, effective April 1, 2013.[12] Defendants state that this termination ended any obligation that defendants or plaintiff had to the City regarding the Project.[13]

In May 2013, defendants filed suit against the City in Civil District Court for the Parish of New Orleans for damages due under the Yacht Harbor Project contract.[14] On December 2, 2013, the City responded by filing a reconventional demand, alleging that defendants breached the Yacht Harbor Project contract by failing to perform

---

[11] R. Doc. 22 at 2-4.

[12] *See* R. Doc. 13-9 (defendants' Sworn Notice of Termination of Public Works Contract, filed in the Mortgage Records for Orleans Parish, dated February 27, 2014).

[13] R/ Doc 22 at 4.

[14] *See* R. Doc. 22-1 at 7 (Defendant's Petition for Damages, For Amounts Due Under Contract, and for Declaratory Judgment).

agreed upon work.[15]  On October 6, 2014, the City amended its reconventional demand to assert a claim against plaintiff as surety for defendant's performance.[16]  This lawsuit(the "State Litigation") is still pending in the Orleans Parish Civil District Court.

The parties here have also been sued by one of the subcontractors on the Yacht Harbor Project, Industrial & Mechanical Contractors, Inc. ("Industrial").  On January 23, 2014, Industrial sued plaintiff and defendants, alleging that it was owed $13,331.00 plus interest, attorneys' fees, and lien filing fees as a result of defendants' non-payment.[17]  Defendants admit that they did not dispute Industrial's claim and that they informed plaintiff that the claim was proper.[18]  After defendants

---

[15] *Id.* at 36 (City's Answer, Affirmative Defenses, and Reconventional Demand).

[16] R. Doc. 13-7 (City's Amended Reconventional Demand for Damages Due Under Contract).

[17] R. Doc. 13.5 (Industrial's petition for compensation for work done and materials provided to the Yacht Harbor Project).

[18] R. Doc. 13-12 at 5, ¶ 14; *see also* R. Doc. 22-2 at 2, ¶ 14 (defendant's admission to plaintiff's statement of uncontested fact).

failed to resolve Industrial's claim, plaintiff settled the
claim itself and paid Industrial $10,000.[19]

---

[19] *Id.*

## C.  Plaintiff's Setting of a Reserve and Demand for Collateral

In light of the current and anticipated litigation concerning the Yacht Harbor Project, plaintiff purported to exercise its rights under the Indemnity Agreement by setting a reserve and demanding that defendants post funds in the amount of $300,000.[20]  Plaintiff's counsel explained the decision to set a reserve in a June 3, 2013 letter to defendants:

> [A]s you are aware, the City of New Orleans considers Precision to be in default of the contract as of January 24, 2013, and has notified [plaintiff] of this alleged default . . . . We have also learned that Precision has recently filed suit against the City of New Orleans, the project architect, and a subcontractor on the project, which leaves [plaintiff] exposed to potential countersuit by the City of New Orleans. [Plaintiff] will continue to incur costs, expenses, and attorneys' fees in protecting itself and its interest, for which each of you is liable under the Indemnity Agreement.
>
> *     *     *
>
> [Plaintiff] has deemed itself insecure as a result of both the outstanding Mechanical Contractors, Inc. lien and the ongoing dispute between

---

[20] R. Doc. 13-8 (plaintiff's letter to defendants, dated June 3, 2013).

Precision and the City of New Orleans regarding completion of the project.[21]

Accordingly, the letter stated that plaintiff had set a reserve in the amount of $300,000. Plaintiff demanded that defendants post collateral in the amount of $300,000 within ten days in order to secure plaintiff from anticipated losses and expenses.[22] Defendants admit that they have not posted any cash or collateral and that they have not paid plaintiff $10,000 to indemnify plaintiff for its settlement with Industrial.[23]

## D. Plaintiff's Motion for Partial Summary Judgment and Motion to Separate Trial and Stay Proceeding

Plaintiff filed this lawsuit against defendants, seeking to enforce its rights under the Indemnity Agreement. Count I of plaintiff's complaint alleges that defendants are jointly and severally liable to plaintiff

---

[21] *Id.* at 2.

[22] *Id.*

[23] R. Doc. 13-12 at 6, ¶ 20; *see also* R. Doc. 22-2 at 3, ¶ 20 (defendant's admission to plaintiff's statement of uncontested fact).

for "all past and future attorneys' fees, expenses, and costs incurred by [plaintiff]" as a result of having executed the Yacht Harbor Bond and two other bonds not relevant here.[24]   Count II alleges that defendants have failed to post collateral security with plaintiff, as required by the Indemnity Agreement, and seeks an order compelling defendants to post cash or collateral in the amount of its reserve.[25]

Plaintiff now moves for partial summary judgment and seeks (1) indemnification in the amount of $10,000, the amount that plaintiff paid to settle the claim by Industrial; and (2) specific performance of the collateral security provision of the Indemnity Agreement.[26] Plaintiff has also filed a motion to separate the issues in this case and to stay its indemnity claims for future losses and attorneys' fees.[27]   Defendants admit that

---

[24] R. Doc. 1 at 12-13.

[25] *Id.* at 14.

[26] R. Doc. 13-1 at 11-13.

[27] *See* R. Doc. 20.

plaintiff is entitled to $10,000 in indemnification,[28] but they dispute plaintiff's entitlement to specific performance.  Defendants also oppose plaintiff's motion to separate trial and stay proceedings.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (5th Cir. 2008).  The Court must draw

---

[28]  *See* R. Doc. 22 at 12 ("Defendants concede EMC is entitled to partial summary judgment for $10,000 actually paid by EMC to satisfy a claim by Industrial Mechanical for the amounts due for work performed on the City project.").

reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2738 (2d ed. 1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quotation marks removed). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.; see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

## III.   DISCUSSION

**A.   The Indemnity Claim Regarding Plaintiff's Settlement Payment to Industrial**

   1.   *Choice of Law*

   The parties dispute what law governs their agreement. The Indemnity Agreement contains a choice of law provision, which selects Iowa law for the construction and interpretation of the contract.[29]   Under Louisiana law, which would otherwise apply, contractual choice of law provisions are valid unless the chosen law contravenes the public policy of the state whose law would otherwise apply. LA. CIV. Code art. 3540.   Louisiana law also provides that a choice of law provision may not be enforced if the law chosen does not have a significant relationship to the contract. *See Lafayette Stabilizer Repair, Inc. v. Mach. Wholesalers Corp.*, 750 F.2d 1290, 1294 (5th Cir. 1985) (concluding that a significant relationship existed when contract was approved in state of law chosen, which was home office of seller).   Here, the relevant contract principles are similar in Iowa and Louisiana, so enforcing the choice

---

   [29] R. Doc. 1-1 at 5, § 27.

of law provision would not undermine Louisiana policy.  In addition, plaintiff is an Iowa corporation with its principal place of business in Des Moines, Iowa.  Thus, the Indemnity Agreement bears a sufficient relationship to Iowa, and the Court will apply the choice of law provision.

    2.  *Application of Governing Law*

    Under Iowa law, the construction or legal effect of a contract is a matter of law to be decided by the court. *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207, 210 (Iowa 1975).  When constructing a written contract, the court is guided by the "'cardinal principle' that the parties' intent controls." *Amerus Prop. Brokers v. Hicklin*, 585 N.W.2d 245, 247 (Iowa 1998) (quoting Iowa R. Civ. P. 6.904).  Absent ambiguity or relevant extrinsic evidence, intent "is determined by what the contract itself says." *Id.; see also State v. Starzinger*, 179 N.W.2d 761, 764 (Iowa 1970) (concluding that where there is no relevant extrinsic evidence, the court must give effect to the language of the contract according to its commonly accepted and ordinary meaning).  Thus, "the court will not resort

to rules of construction where intent of the parties is expressed in clear and unambiguous language." *Allen v. Highway Equip. Co.*, 239 N.W.2d 135, 139 (Iowa 1976).

Under the Indemnity Agreement, defendant is required to indemnify plaintiff against "any and all liability for losses and/or expenses of whatsoever kind or nature" which plaintiff sustains "by reason of having executed . . . the Bonds." [30]  The agreement further provides that the plaintiff may "pay or compromise" any claim arising out of the bond, and "any such payment or compromise shall be binding upon [defendants] and included as a liability, loss, or expense covered by this Indemnity Agreement."[31] Thus, upon receiving a claim on its bond, plaintiff may settle the claim with a payment, and defendants are obligated to indemnify plaintiff in the amount of its loss.

Plaintiff alleges, and defendants do not dispute, that Industrial sued both defendants and plaintiff in January 2014, alleging that it was owed $13,331.00, plus interest,

---

[30] R. Doc. 1-1 at 2, § 2.

[31] *Id.*

attorneys' fees, and lien filing fees as a result of defendants' non-payment.[32]  Defendants also do not contest that plaintiff paid Industrial $10,000 to settle the claim.[33]  From these facts, it is clear that plaintiff is entitled to indemnification.  Plaintiff's payment was intended to settle a claim against its bond, and the Indemnity Agreement states that defendants will indemnify plaintiff for payments that plaintiff makes to settle such claims.  Indeed, defendants do not dispute this liability and concede that plaintiff is entitled to partial summary judgment on its claim for indemnification for the amount paid to Industrial.[34]

The Court finds that plaintiff is entitled to indemnification in the amount of $10,000 actually paid by plaintiff to settle Industrial's claim for work performed

---

[32]  R. Doc. 13-12 at 5, ¶ 14; *see also* R. Doc. 22-2 at 2, ¶ 14 (defendant's admission to plaintiff's statement of uncontested fact).

[33]  *Id.*

[34]  *See* R. Doc. 22 at 12 ("Defendants concede EMC is entitled to partial summary judgment for $10,000 actually paid by EMC to satisfy a claim by Industrial Mechanical for the amounts due for work performed on the City project.").

on the Yacht Harbor project, as requested in Count I of plaintiff's complaint.   The Court will enter partial summary judgment in favor of plaintiff.

**B.   The Claim for Specific Performance of the Collateral Security Provision**

   1.  *The Collateral Security Provision*

   Section 11 of the Indemnity Agreement states that plaintiff has "sole discretion" to set a reserve of "any amount" that it deems necessary to cover any loss or expense fee sustained by plaintiff in the performance of the bonds.[35]   Upon written demand by plaintiff, defendants must "deposit with [plaintiff] cash or collateral in the amount of such reserve."[36]   Plaintiff may use the deposit to pay any loss or expense it sustains in relation to the bonds.[37] This is known as a collateral security provision.  *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir.1984). As the Ninth Circuit Court of Appeals has explained:

   [A] collateral security provision provides that

---

   [35] R. Doc. 1-1 at 3, § 11.

   [36] *Id.*

   [37] *Id.*

> once a surety ... receives a demand on its bond,
> the indemnitor must provide the surety with funds
> which the surety is to hold in reserve. If the claim
> on the bond must be paid, then the surety will pay
> the loss from the indemnitor's funds; otherwise,
> the surety must return the funds to the indemnitor.

*Id.* Here, plaintiff set a reserve in the amount of $300,000

and demanded defendant post collateral equal to the reserve

within ten days.[38]  Plaintiff's demand letter, dated June

3, 2013, states:

> [Plaintiff] has deemed itself insecure as a result
> of both the outstanding Industrial and Mechanical
> Contractors, Inc. lien and the ongoing dispute
> between [plaintiff] and the City of New Orleans
> regarding completion of the Project. [Plaintiff]
> has therefore set a reserve in the amount of
> $300,000.00.  Accordingly, [plaintiff] hereby
> makes the following demand[]: (1) That each of you
> honor your obligations to [plaintiff] under the
> Indemnity Agreement and applicable law by posting
> collateral with [plaintiff] equal to the reserve
> set, in the amount of $300,000.00, within ten days
> of the date of this letter in order to secure
> [plaintiff] from the losses and expenses that it
> anticipates it will continue to incur in
> connection with the bonds.[39]

Defendants do not argue that the contract is ambiguous.

Nor do they deny that (1) they executed the Indemnity

---

[38] *See* R. Doc. 13-8 (plaintiff's letter to defendants, dated June 3, 2013).

[39] *Id.* at 2.

Agreement; (2) plaintiff's June 3, 2013 letter set a reserve and made a demand for collateral in the amount of $300,000; or that (3) defendants have refused to deposit cash or collateral with plaintiff.[40]

Nonetheless, defendants argue that plaintiff is not entitled to collateral security because plaintiff has not shown a factual basis for the amount of its reserve.[41] Defendants' position is that unless plaintiff shows that it realistically faces a loss under the bond, plaintiff's demand cannot trigger defendant's duty to post cash or collateral. Defendants do not cite any provision of the Indemnity Agreement expressly stating this requirement. The Indemnity Agreement gives plaintiff "*sole discretion*" to set a reserve in "*any amount*." Nothing in the language of the contract qualifies this right or suggests that plaintiff must provide a justification for its

---

[40] R. Doc. 13-12 at 2, ¶ 7; *see also* R. Doc. 22-2 at 2, ¶ 7 (defendant's admission to plaintiff's statement of uncontested fact).

[41] R. Doc. 22 at 8.

calculations.[42]   *See Int'l Fid. Ins. Co. v. Vimas Painting Co.*, No. 2:07-CV-298, 2009 WL 485494, at *6 (S.D. Ohio Feb. 26, 2009) (concluding that an indemnitor was required to post collateral security despite its allegations of bad faith because the contract's terms did not indicate that the parties intended to condition the surety's right to collateralization on a finding that the surety acted in good faith in making its demand).   Defendants' argument is that the Court should imply a factual basis requirement and interpret it into the contract as a matter of law.

---

[42] R. Doc. 1-1 at 3, § 11.

The parties do not cite, and the Court has not found, any Iowa cases addressing the enforcement of a collateral security provision in an indemnity agreement. But numerous courts in other states have held that such provisions require an indemnitor to post collateral security in the amount of the surety's reserve.[43] The event that triggers the indemnitor's duty is either the surety's receipt of a demand on the bond, *see Safeco*, 739 F.2d at 433, or the surety's decision to set a reserve and demand

---

[43] *See e.g.*, *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984); *Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 (2d Cir. 1989) (finding that indemnitor was required to provide funds in collateral security after claimant demanded payment on the bond under the express terms of a collateral security agreement); *Employers Mut. Cas. Co. v. JVV Consulting-Constr. Mgmt., L.L.C.*, No. CIV.A. 11-79-JJB, 2012 WL 1028607, at *4 (M.D. La. Mar. 26, 2012) (construing a collateral security provision identical to the provision in this case to mean that the surety "had a right to demand defendants deposit a reserve amount to cover amounts determined by [the surety] in its sole discretion necessary to cover any judgment, claim, loss, or other fee sustained by [the surety] in the performance of the bonds"); *Travelers Cas. & Sur. Co. v. Ockerlund*, No. 04 C 3963, 2004 WL 1794915, at *4 (N.D. Ill. Aug. 6, 2004) (concluding that collateral security provision required indemnitor to deposit collateral security upon the occurrence of two conditions precedent: the surety's establishment of a reserve and the surety's demand that indemnitor post collateral); *U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) aff'd, 185 F.3d 864 (3d Cir. 1999) (noting that "collateral security clauses have routinely been upheld" as written); *see also Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Const.*, LLC, 807 F. Supp. 820, 825 (E.D. Mo. 2011) (collecting cases).

collateral, *see Travelers*, 2004 WL 1794915, at *4, depending on the express language of the collateral security provision. Once the triggering event occurs, the indemnitor is contractually bound to deposit funds in the amount of the reserve. *See Safeco*, 739 F.2d at 433 (holding that an indemnity agreement should be construed to require the indemnitor to provide collateral security upon demand by the surety and prior to actual loss on the bond). This duty to post collateral security applies even if the surety has not yet determined the extent of its liability under the bonds. *See Am. Motorists*, 876 F.2d at 299, 302 (finding surety's claim for specific performance of its right to collateralization to be ripe, even though its indemnity liability for the full amount of the bond was "speculative"); *see also U.S. Sur. Co. v. Stevens Family Ltd. P'ship*, 905 F. Supp. 2d 854, 860 (N.D. Ill. 2012) (concluding that surety had no duty to investigate whether the claim against it was valid before demanding the full amount of the claim as collateral to cover its possible loss).

Defendants' contention that plaintiff must nonetheless prove the extent of liability that it realistically faces finds little support in the case law. Defendants cite just one case from an intermediate appellate court in Florida. In *Transamerica Premium Insurance Co. v. Cavalry Construction Inc.*, a surety company executed a bond in favor of a construction contractor. Under the parties' indemnity agreement, the contractor was required, upon demand by the surety, to deposit "cash or other property . . . as collateral security, in sufficient amount to protect the Surety" against claims or potential claims on its bond. The surety set a reserve and demanded collateral, but the Fifth District Court of Appeal of Florida held that the surety was not entitled to collateral security because it had failed to "flesh out the nature and approximate amount of the claims and liabilities it might reasonably anticipate under the bond." 52 So. 2d 225, 226 (Fla. Dist. Ct. App. 1989). The court reasoned that "the party seeking *quia timet* relief must clearly establish a basis for it." *Id.*

The court did not elaborate; nor did it cite any authority for its legal conclusion or address the great weight of cases holding that a surety's right to collateralization should be enforced as written, without any implied duty to "flesh out" the surety's reserve calculation. Additionally, the collateral security provision in *Transamerica* was phrased differently than the provision in this case. Here, the Indemnity Agreement states that plaintiff has "sole discretion" to set a reserve in "*any amount*." In *Transamerica*, the contract required the indemnitor to deposit collateral "in *sufficient amount* to protect the Surety with respect to such claim or potential claim . . . ." *Id.* (emphasis added). To the extent that the court in *Transamerica* intended its holding to effectuate the requirement that the demand be merely "sufficient" to address claims against the surety, its reasoning does not apply to the broader collateral security provision here. Thus, this single case from Florida does not convince the Court that Iowa law requires plaintiff to make any particular showing before exercising its

contractual right to demand collateral security.

Here, defendants admit that plaintiffs set a reserve of $300,000 and demanded collateral security.[44]  Under the plain terms of the Indemnity Agreement, plaintiff's demand triggered defendants' duty to "deposit with [plaintiff] cash or collateral in the amount of such reserve and every increase thereof." [45]  Despite this contractual duty, defendants have admittedly refused to deposit with plaintiff cash or collateral of any kind.[46]  Thus, the Court finds that defendants breached the collateral security provision of the Indemnity Agreement.

2.  *The Equitable Remedy of Specific Performance*

By its motion for partial summary judgment, plaintiff seeks specific performance of the Indemnity Agreement in the form of an order compelling defendants to post

---

[44]  R. Doc. 13-12 at 2, ¶ 7; *see also* R. Doc. 22-2 at 2, ¶ 7 (defendant's admission to plaintiff's statement of uncontested fact).

[45]  R. Doc. 1-1 at 3, § 11.

[46]  R. Doc. 13-12 at 2, ¶ 7; *see also* R. Doc. 22-2 at 2, ¶ 7 (defendant's admission to plaintiff's statement of uncontested fact).

collateral in the amount of plaintiff's reserve. Because Iowa law governs the Indemnity Agreement between the parties, the Court looks to Iowa law to determine plaintiff's entitlement to specific performance. *See Horner v. Bourland*, 724 F.2d 1142, 1144-45 (5th Cir. 1984) (reviewing district court's refusal to specifically enforce real estate contract under the law of the forum state); *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 132 (5th Cir. 1986) ("The district court, on remand, should be guided by the usual criteria that govern a decree of specific performance in Texas."). Under Iowa law, "specific performance is a matter of equity rather than a strict right and rests in the sound discretion of the court." *Pazawich v. Johnson*, 39 N.W.2d 590, 592 (1949). A court will not award specific performance "unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions under which performance is due." *Id.* (holding that an instrument that purported to convey real property could not be specifically enforced as it

lacked many essential details of the parties' agreement). Additionally, specific performance will not be granted when the party claiming breach of contract has an adequate remedy at law. *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 423 (Iowa 1977).

Here, the terms of the parties' contract are clear. The collateral security arrangement is spelled out in great detail in Section 11 of the Indemnity Agreement. This provision plainly states that plaintiff has the contractual right to set a reserve in "any amount," and upon receiving a written demand, defendants are obligated to deposit security in the amount of plaintiff's reserve.[47] The Court need look no further than the plain meaning of the written words to understand this arrangement. *Cf. Pazawich*, 39 N.W.2d at 592-93 (holding that an instrument that purported to convey real property but lacked many of the terms necessary to complete a real estate sale could not be specifically enforced). Thus, the arrangement is sufficiently clear to permit specific performance.

---

[47] R. Doc. 1-1 at 3, § 11.

The primary issue, then, is whether plaintiff has an adequate remedy at law for defendants' failure to post collateral security.  Plaintiff argues that its legal remedies are inadequate because a claim for money damages would deprive plaintiff of its prejudgment right to collateralization.[48]  This argument finds support in an extensive body of case law.  Courts have generally held that a surety is entitled to specific performance of a collateralization right because specific performance is necessary to protect the surety's bargained-for right to prejudgment relief.  *See e.g.*, *Safeco v. Schwab*, 739 at 433 ("Sureties are ordinarily entitled to specific performance of collateral security clauses."); *Safeco v. Lake*, 807 F. Supp. 2d at 827 ("[T]he law favors protecting a surety's right to collateralization by granting specific performance."); *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1320 (S.D. Fla. 2008) ("[C]ase law nationwide has affirmed the availability of [specific performance]" in an action to compel an

---

[48] R. Doc. 28 at 7-8.

indemnitor to post collateral); *Liberty Mut. Ins. Co. v. Nat'l Pers. of Tex., Inc.*, 2004 WL 583531, at *2 (N.D. Tex. Mar. 24, 2004) ("Courts have generally granted specific performance to enforce collateral security clauses based on the premise that such remedy is required to protect the benefit of the surety's bargain").

The Court recognizes that there is a contrary minority position. Some courts have refused to specifically enforce collateral security provisions absent a specific showing by the surety as to why the surety's remedies at law are inadequate. *See e.g.*, *Safeco Ins. Co. of Am. v. Mountaineer Grading Co.*, 2012 WL 830158, at * 10 (S.D.W.Va. March 9, 2012) (holding that a surety failed to demonstrate an entitlement to specific performance when it asserted only that indemnitors failed to provide collateral security upon demand and did not offer any evidence demonstrating why its legal remedies were inadequate). These cases do not give sufficient weight to the nature of the surety's right to right to collateral security. As the majority position recognizes, a surety's claim for

collateralization is not just an issue of monetary loss, which can be remedied by monetary damages; rather, it is an issue of protecting the surety's expectations under the indemnity contract. *See Travelers v. Ockerlund*, 2004 WL 1794915, at *6. A surety who holds a contractual right to demand collateral security has specifically bargained for a contractual right to prejudgment relief. So if the surety is "to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Safeco*, 807 F. Supp. 2d at 827; *see also Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014) (concluding that because a surety had bargained for prejudgment collateralization, a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled).

Plaintiff in this case bargained for the right to demand and receive funds, which it could use to pay losses that it anticipated incurring on the Yacht Harbor Bond. That bargain will be frustrated if plaintiff is required

to "suffer any loss, even if only temporary, associated with the performance of the primary obligor's duty." *Travelers v. Ockerlund*, 2004 WL 1794915, at *4.   Thus, the Court finds that plaintiff's legal remedies are inadequate.   While plaintiff may be entitled to money damages in this matter, an award of damages after trial does not adequately vindicate the plaintiff's right to collateralization.   *See Ohio*, 7 F. Supp. 3d at 214 (noting that surety's true injury the loss of its bargained-for and contractually-guaranteed position as a secured creditor," a loss that cannot be rectified post judgment).   Plaintiff is therefore entitled to the injunctive relief its seeks.

Defendants resist this conclusion by arguing that plaintiffs have not made the showings required for a preliminary injunction.   Defendants cite a Florida district court case for the proposition that "a party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury to the

moving party outweighs whatever damage the proposed injunction may cause the opposing party, and (4) if issued, the injunction would not be adverse to the public interest." *Developers Sur. & Indem. Co. v. Hansel Innovations, Inc.*, No. 8:14-CV-425-T-23TBM, 2014 WL 2968138, at *4 (M.D. Fla. July 1, 2014). Defendants misconstrue the nature of plaintiff's motion. Plaintiff does not seek a preliminary injunction but, rather, specific performance of its right to collateral security. As discussed in Section III.B.1 above, a party's entitlement to specific performance is governed by state law, not the federal standards for granting injunctive relief under Rule 65 of the Federal Rules of Civil Procedure. *See e.g.*, *Horner*, 724 F.2d at 1144-45. Thus, courts in this circuit and others have repeatedly granted specific enforcement of collateral security provisions, as long as specific performance is available under state law.[49]   Here, plaintiff has

---

[49]   *See e.g., Safeco v. Schwab*, 739 F.2d at 433; *Am. Motorists* 876 F.2d at 302; *Employers Mut. Cas. Co.*, No. CIV.A. 11-79-JJB, 2012 WL 1028607, at *4 (applying Louisiana law to conclude that surety is entitled to specific performance of right to collateralization); *U.S. Fid. & Guar. Co.*, 15 F. Supp. 2d at 588; *Safeco v. Lake Asphalt*,

established that it is entitled under Iowa law to specific performance of its contractual right to collateral security. Plaintiff does not need to make any additional showing to obtain its requested relief.

### 3. *The Amount of the Reserve*

Defendants claim that other facts are relevant to plaintiff's specific performance claim. Specifically, defendants describe the Yacht Harbor Project in great detail. According to defendants, poor planning and delays caused by the City of New Orleans marred the Project from the beginning.[50] Defendants allege that the City (1) provided specifications for the project that did not conform to local building codes; (2) failed to perform necessary lead paint abatement work; and (3) were slow to respond to request for information and to process change

---

807 F. Supp. 2d at 825 (applying Missouri law to determine surety's entitlement to specific performance of a collateral security provision); *U.S. Sur. Co. v. Stevens*, 905 F. Supp. 2d at 859-860 (specifically enforcing collateral security provision on the ground that "provisions of this nature are both recognized and enforced in California"); *Liberty Mut.*, 2004 WL 583531, at *2 (applying Texas law to determine propriety of surety's request for specific performance of right to collateralization).

[50] R. Doc. 22 at 2-4.

orders.[51]   As a result, defendants ultimately terminated the contract and sued the City to recover for work performed and for delays.[52]   Defendants acknowledge that the City has filed a reconventional demand against defendants and has made a claim against plaintiff on the bond.[53]   But defendants argue that because the City is at fault, plaintiff does not face any real risk of loss and therefore is not entitled to collateral security in the amount of its demand.

While defendants' allegations are certainly relevant in the State Litigation between the parties here and the City of New Orleans, they are irrelevant to plaintiff's claim for collateral security.   Whether the City eventually recovers from plaintiff in the State Litigation is not determinative of plaintiff's right to specific performance of its right to collateralization.   Under the

---

[51]   *Id.*

[52]   *Id.* at 3-4.

[53]   R. Doc. 13-12 at 5, ¶ 16; *see also* R. Doc. 22-2 at 2, ¶ 16 (defendant's admission to plaintiff's statement of uncontested fact).

Indemnity Agreement, plaintiff has "sole discretion" to determine whether a reserve is necessary and to demand a deposit of cash or collateral in the amount of that reserve.[54]  And plaintiff has the right to use such funds as collateral against any loss or expenses incurred in connection with the Yacht Harbor Bond.[55]  As explained in section III.B.1 above, nothing in contract's language qualifies plaintiff's right to set a reserve or requires plaintiff to justify the amount of collateral security demanded.  Thus, regardless of how confident defendants are in their legal position against the City, they are duty-bound under the Indemnity Agreement to deposit collateral in the amount of plaintiff's reserve.  *See Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures, LLC*, 2010 WL 5017798, at *6 (C.D. Cal. Nov. 19, 2010) (concluding that the amount of collateral security sought by the surety is of no consequence because "by ordering specific performance, the Court is only telling the parties

---

[54] R. Doc. 1-1 at 3, § 11.

[55] *Id.*

to do what they contracted to do").

Defendants also suggest that plaintiff's demand is improper because plaintiff itself has contested the City's claims against the bond in the State Litigation.  But this argument too is clearly without merit.  Plaintiff has a right to defend itself in litigation, and plaintiff does not forfeit its rights under the Indemnity Agreement by contesting the validity of claims against its bond.  *See Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland Constructors Corp.*, 2013 WL 2285204, at *4 (D. Ariz. May 22, 2013) (concluding that "a defense of litigation under a full reservation of rights" does not affect surety's contractual right to specific performance of a collateral security provision).

Finally, the Court is not persuaded by defendants' suggestion that the amount of plaintiff's reserve is too high compared to its realistic risk of loss.  Under the Yacht Harbor Bond, plaintiff bound itself as surety in the sum of $754,000.[56]  The City alleges that defendants are in

---

[56] R. Doc. 13-12 at 4, ¶ 11; *see also* R. Doc. 22-2 at 2, ¶ 11

default of their obligations under the Yacht Harbor Project contract and has made a claim against plaintiff's bond. Again, the State Litigation is not before this Court, and the Court will not evaluate the parties' claims there.  It is worth noting, however, that plaintiff's reserve and demand for $300,000.00 of collateral is well below the amount of loss that plaintiff could potentially face by reason of having executed the Yacht Harbor Bond.

The Court finds, based on uncontested facts, that plaintiff is entitled to specific performance as requested in Count II of its complaint.  The Court will enter partial summary judgment in favor of plaintiff.

## C.  Motion to Separate Issues and Stay Certain Claim

Having addressed plaintiff's motion for partial summary judgment, the Court turns to plaintiff's motion to separate the trial and stay certain proceedings. Plaintiff asks the Court to separate trial on the issues of liability, losses already incurred, and collateral

---

(defendant's admission to plaintiff's statement of uncontested fact).

security from trial on the issue of future losses and attorneys' fees.[57]   Plaintiff further asks that the Court stay the issue of future losses and attorneys' fees until the underlying litigation in state court is resolved, permitting a full determination of plaintiff's losses on the bond.   This order granting partial summary judgment in favor of plaintiff on its claims for indemnity and specific performance renders plaintiff's motion to separate trial moot.   The only claims that remain in this case are plaintiff's claims for future losses and attorneys' fees under the Indemnity Agreement, so there is nothing for the Court to separate.   The only remaining issue is whether the Court should stay plaintiff's remaining claims for indemnity pending resolution of the underlying State Litigation.

---

[57] *See* R. Doc. 20.

Before the Court can determine the propriety of the stay, a threshold issue must be addressed.   The Court notes that under Iowa law an action for indemnity does not accrue until "the indemnitee's legal liability becomes fixed or certain as in the entry of a judgment or a settlement." *Evjen v. Brooks*, 372 N.W.2d 494, 496 (Iowa 1985) (citing *Vermeer v. Sneller*, 190 N.W.2d 389, 392 (Iowa 1971).   Thus, a party cannot enforce its rights under an agreement to indemnify until or unless it suffers some "actual loss or damage."   *Becker v. Cent. States Health & Life Co. of Omaha*, 431 N.W.2d 354, 357 (Iowa 1988) overruled on other grounds by *Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13 (Iowa 1992); *see also Kaydon Acquisition Corp. v. Custum Mfg., Inc.*, 301 F. Supp. 2d 945, 960 (N.D. Iowa) (interpreting the "actual loss" requirement to mean not simply the accrual of liabilities but the actual payment of a claim for which the payor is entitled to indemnification from another).   In light of these principles, the Court questions the viability of plaintiff's stated claim for indemnification for "future

attorneys' fees, expenses, and costs incurred."[58]   Thus, before the Court can rule on the motion to stay proceedings, plaintiff must show cause why its claim for indemnification for future losses should not be dismissed as premature instead of stayed.


## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for partial summary judgment on its claims for: (1) contractual indemnification in the amount of $10,000.00, the amount that plaintiff paid to settle the claim by Industrial; and (2) specific performance of the collateral security provision of the Indemnity Agreement. The Court ORDERS defendants to deposit with plaintiff cash or collateral in the amount of the reserve established by plaintiff's, $300,000.00, within ten days from the date of this order.

The Court further ORDERS plaintiff to show cause by

---

[58] R. Doc. 1 at 13.

September 10, 2015 why its claim for indemnification for future losses and expenses should not be dismissed as premature under Iowa law, rather than stayed. Defendants may respond by September 15, 2015.

New Orleans, Louisiana, this ___8th___ day of September, 2015.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE