UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY | CIVIL ACTION |
| VERSUS | NO: 14-1420 |
| PRECISION CONSTRUCTION & MAINTENANCE, LLC, ET AL. | SECTION: R |

## ORDER AND REASONS

Plaintiff Employers Mutual Casualty Company ("EMC") moves the Court to separate the issues in this case and to administratively stay its claims for indemnification for ongoing and future losses pending resolution of an underlying litigation. In a prior ruling, the Court noted that the claims EMC seeks to have stayed appear premature under applicable law. Thus, the Court ordered EMC to show cause why those claims should not be dismissed instead of stayed. After reviewing EMC's supplemental briefing on the issue, the Court finds that the remaining claims for indemnification are premature and must be dismissed. EMC's motion to separate and stay proceedings is denied as moot.

1

## I.     BACKGROUND

This case involves a contractual dispute between a surety company and a construction contractor. A full explanation of the factual and procedural background can be found elsewhere.[1] Here, the Court presents only those facts relevant to the instant order.

EMC issued payment and performance bonds that enabled Precision Construction & Maintenance, LLC, Craig Trahan, and Marilyn Trahan (collectively, the "defendants") to obtain several construction and renovation contracts. To protect EMC against any loss on its bonds, defendants executed a General Agreement of Indemnity (the "Indemnity Agreement") in EMC's favor.[2] Section 2 of the Indemnity Agreement states that defendants:

> [S]hall exonerate, indemnify, and keep indemnified [EMC] from and against any and all liability for losses and/or *expenses of whatsoever kind or nature (including, but not limited to interest, court costs and counsel fees)* and from and against any and all such losses and/or expenditures which [EMC] may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of [defendants] to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this agreement.[3]

---

[1] R. Doc. 39.

[2] R. Doc. 1-1.

[3] *Id.* at 1, § 2.

2

After executing the Indemnity Agreement, defendants contracted with the City of New Orleans to serve as a general contractor for repairs on the Municipal Yacht Harbor Administration Building (the "Yacht Harbor Project").[4] EMC then provided a payment and performance bond, which secured defendants' obligation to perform the contracting work for the City of New Orleans.[5] Unfortunately, the Yacht Harbor Project did not go as planned. After years of delays and disagreements between various parties, defendants terminated the Yacht Harbor Project contract[6] and sued the City for damages in Orleans Parish Civil District Court.[7] The City responded by filing a reconventional demand, alleging that defendants breached the contract by failing to perform agreed-upon work.[8] The City later amended its reconventional demand to assert a claim against EMC as surety for defendants' performance.[9] This lawsuit, (the "State Litigation") is still pending in Civil

---

[4] *See* R. Doc. 13-4.

[5] R. Doc. 13-12 at 4.

[6] *See* R. Doc. 13-9 (Defendants' Sworn Notice of Termination of Public Works Contract, filed in the Mortgage Records for Orleans Parish, dated February 27, 2014).

[7] *See* R. Doc. 22-1 at 7 (Defendants' Petition for Damages, For Amounts Due Under Contract, and for Declaratory Judgment).

[8] *Id.* at 36 (City's Answer, Affirmative Defenses, and Reconventional Demand).

[9] R. Doc. 13-7 (City's Amended Reconventional Demand for Damages Due Under Contract).

District Court.

On June 18, 2014, EMC filed this lawsuit, seeking to enforce its rights against defendants under the Indemnity Agreement.[10] Count I of EMC's complaint alleges that defendants are jointly and severally liable for "all past and future attorneys' fees, expenses, and costs incurred" by EMC as a result of having executed bonds for defendants' projects. Count II alleges that defendants failed to post collateral security with EMC, as required by the terms of the Indemnity Agreement, and seeks an order compelling defendants to post cash or collateral in the amount of EMC's reserve. On June 10, 2015, EMC moved the Court for partial summary judgment.[11] EMC then moved the Court to separate the issues in this case and stay its claims for ongoing and future losses and attorney's fees.[12]

On September 2, 2015, the Court granted EMC's motion for partial summary judgment and ordered that defendants pay $10,000 in indemnity and post cash or collateral in the amount of EMC's $300,000 reserve. The Court noted, however, that EMC's claims for indemnification for ongoing and

---

[10] R. Doc. 1.

[11] R. Doc. 13-1.

[12] R. Doc. 20.

future losses appeared to be premature under Iowa law.[13] Accordingly, the Court ordered that EMC show cause why its remaining claims for indemnification should not be dismissed instead of stayed. EMC timely filed a supplemental briefing in support of its request for an administrative stay. Defendants have not responded.

## II. DISCUSSION

Under Iowa law, an action for indemnity "accrues or becomes enforceable only when the indemnitee's legal liability becomes fixed or certain as in the entry of judgment or a settlement." *Evjen v. Brooks*, 372 N.W.2d 494, 496 (Iowa 1985); *see also McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 574 (Iowa 2002) ("Normally, a judgment in the underlying action will establish the essential liability to pursue indemnification."); 42 C.J.S. Indemnity § 25 ("In the usual indemnity situation, the indemnitor is liable to the indemnitee only after a judgment has been entered against it, and until that has occurred, no responsibility exists."). Thus, claims for indemnification do not arise until the party seeking indemnity

---

[13] The Indemnity Agreement contains a choice-of-law provision, which states that the contract is governed by Iowa law. The Court's prior order concluded that the provision was valid and enforceable and construed the Indemnity Agreement under the principles of Iowa law.

has suffered "some actual loss or damage." *Becker v. Cent. States Health & Life Co. of Omaha*, 431 N.W.2d 354, 357 (Iowa 1988) *overruled on other grounds by Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13 (Iowa 1992). Indemnification claims are therefore premature until the aggrieved party makes actual payment on the underlying claim pursuant to a settlement or judgment. *See Kaydon Acquisition Corp. v. Custum Mfg., Inc.*, 301 F. Supp. 2d 945, 960 (N.D. Iowa) *order clarified on reconsideration*, 317 F. Supp. 2d 896 (N.D. Iowa 2004) (concluding that the "actual loss or damage" requirement means "not simply incurring costs to defend against a claim to which indemnity may apply, but the 'actual loss or damage' of paying a claim for which the payor is entitled to indemnity from another").

 Here, EMC admits that the State Litigation is ongoing and that there has been no judgment on or settlement of the claims against it. Nonetheless, EMC argues that its claims for indemnification are ripe because it has incurred, and continues to incur, attorneys' fees and other costs in connection with the State Litigation. While EMC may eventually be entitled to recover its ongoing expenditures under the Indemnity Agreement, the mere payment of counsel fees does not give rise to a cause of action for indemnification. *See Kaydon*, 301 F. Supp. 2d at 960. A claim for indemnification "becomes enforceable *only when the indemnitees' legal liability becomes fixed or certain* as in the

entry of a judgment or a settlement." *Becker*, 431 N.W.2d at 357 (emphasis added). So until the Civil District Court renders a judgment in the State Litigation or EMC settles the claims against it, EMC has no cause of action for indemnity.[14] Because there is no claim for EMC to pursue at this time, EMC's suit is premature and must be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court DISMISSES WITHOUT PREJUDICE plaintiff's remaining claims for indemnification. The Court DENIES AS MOOT plaintiff's motion to separate issues and stay proceedings.

New Orleans, Louisiana, this  17th   day of September, 2015.

_____
Sarah S. Vance
United States District Judge

---

[14] EMC argues that judicial economy warrants a stay in this case rather than dismissal because "[t]he Court is already familiar with the parties and issues involved, and has made dispositive findings of fact and conclusions of law with respect to the GAI." The Court finds this argument unpersuasive. In light of the Court's duty to "not let cases languish before it," *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 407 (S.D. Tex. 2009), the Court finds dismissal without prejudice to be more appropriate.

7